JUSTICE TRIEWEILER
delivered the opinion of the Court.
¶1 Theodore Roosevelt, IV, who was designated the petitioner, and the Montana Department of Revenue, which was designated the respondent, filed a joint petition in the District Court for the Tenth Judicial District in Fergus County for interlocutory adjudication pursuant to §§ 15-2-304 and -305, MCA, of legal issues raised before the Montana State Tax Appeal Board (STAB). The parties asked the District Court to determine whether the 2% phase-in of changes in real property value, as set forth in § 15-7-111, MCA, violated the United States or Montana Constitutions, or Montana statutory law. After considering written briefs submitted by the parties and hearing oral argument, the District Court concluded that § 15-7-111(1), MCA (1997), is unconstitutional on its face and in conflict with other statutory law pertaining to the valuation and assessment of real property in Montana. The Department appeals the judgment of the District Court. We affirm that judgment in part, as applied to the petitioner, Theodore Roosevelt, IV.
¶2 We limit our consideration of the issues raised on appeal to the question of whether, as applied to the petitioner, § 15-7-111(1), MCA (1997), violates his right to equal protection of the laws, as guaranteed by Article II, Section 4, of the Montana Constitution.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 The following facts are taken from the parties’ joint petition to the District Court. They are agreed upon by the parties and are the only facts of record.
¶4 Theodore Roosevelt, IV, owns real property and improvements to that property which are located in Fergus County, Montana. At issue in this case is the 1997 taxable value of two improvements to that real property.
*243 ¶5 In 1996, the market value of the property at issue was appraised by the Montana Department of Revenue at $890,850. In 1997, the Department appraised that same property at $701,890. Roosevelt filed an appeal with the Fergus County Tax Appeal Board challenging the 1997 valuation. For purposes of calculating the 1997 value, the county board reduced Roosevelt’s 1996 appraised value to $820,597, and his 1997 appraised value to $658,840. Pursuant to § 15-7-111(1), MCA (1997), the Department then phased in the amount of change in valuation at the rate of 2% per year beginning in 1997. In other words, although the appraised value of Roosevelt’s property declined by $161,757, he was given credit for only a $3,235 difference, and assessed property taxes based on a value of $817,362, rather than his actual 1997 appraised value of $658,840. The county board affirmed the Department’s calculation of the 1997 phase-in value for Roosevelt’s property.
¶6 Roosevelt appealed to the STAB to contest the legality of the 2% phase-in provision of § 15-7-111(1), MCA (1997). The parties then filed the joint petition to the District Court pursuant to § 15-2-305, MCA, which provides in relevant part that:
A district court may make an interlocutory adjudication of an issue pending before the state tax appeal board if that issue involves procedure, the admissibility of evidence, or a substantive question of law and does not require the determination of a question of fact.
¶7 The parties agreed that there were no disputed issues of fact and that the sole issue to be decided was as follows:
Whether the 2% phase in of changes in value, as set forth in § 15-7-111, MCA, is in violation of the United States and Montana constitutional requirements of equal protection and due process, and in violation of the Montana statutory requirement of property value equalization.
In the District Court, Roosevelt argued that:
¶8 1. The phase-in provision violates Article VIII, Section 3, of the Montana Constitution, § 15-9-101(1), MCA, and § 15-8-111(1), MCA, which require the equalization of property values for purposes of taxation.
¶9 2. The phase-in provision violates Article VIII, Section 7, of the Montana Constitution, which guarantees a property owner the right to appeal appraisals and assessments because a property owner cannot, in fact, receive a reduction on appeal based on the true market value of his or her property.
*244 ¶ 10 3. The phase-in provision violates the rights to equal protection of laws and due process guaranteed by the United States and Montana Constitutions, as interpreted in Department of Revenue v. Barron (1990), 245 Mont. 100, 799 P.2d 533, and Department of Revenue v. Sheehy (1993), 262 Mont. 104, 862 P.2d 1181.
¶11 The Department responded that:
¶12 1. Article VIII, Section 3, merely provides for appraisal, assessment, and equalization of value, as provided by law. Section 15-7-111(1), MCA (1997), is the method of appraisal and assessment provided for by law and there is no requirement that property be assessed at 100% of current market value.
¶13 2. Article VIII, Section 7, of the Montana Constitution has not been violated because the Legislature has provided for tax appeal procedures at the local government level through §§ 15-15-101 to -106, MCA, and to the STAB through § 15-2-301, MCA.
¶14 3. Neither Roosevelt’s right to equal protection nor his right to due process has been violated because he has been treated like every other property owner in the state. Rather than Barron and Sheehy, the Court should be guided on this point by Nordlinger v. Hahn (1992), 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1.
¶15 Following written briefs and arguments by the parties, the District Court found that Roosevelt’s taxes, based on the 1997 phased-in value, were $11,246.31, but that his taxes based on his actual market value would have been $9,065.13, for a difference of $2,181.18. The Court found that for the year 1997 the phase-in provision of the 1997 amendment to § 15-7-111(1), MCA, required that Roosevelt pay property taxes based on a valuation which is 124% of the market value of his Class Four property, and concluded, based on the statute, that it would take fifty years for Roosevelt’s property to be assessed at its fair market value. Although the Department questions the District Court’s fifty-year conclusion, the court’s previously referred to findings are not challenged on appeal.
¶16 Based on its findings, the District Court agreed that the phase-in provision violates Article VIII, Sections 3 and 7, of the Montana Constitution, and the Equal Protection and Due Process Clauses of both the United States and Montana Constitutions.
¶17 On appeal, the parties’ arguments are similar to those raised in the District Court, although the Department argues additionally that the District Court assumed facts not in evidence as the basis for its opinion.
*245 ¶18 Except where necessary, we will not repeat the parties’ arguments in detail, nor do we find it necessary to address all of the issues raised in the District Court or decided by the District Court since we conclude that the District Court’s judgment, as it applies to the parties who were before it, is correct based on the District Court’s application of the Equal Protection Clause of the Montana Constitution. Therefore, we will limit our discussion to the following issue:
¶19 As applied to the petitioner and similarly situated property owners, does § 15-7-111(1), MCA (1997), violate the right to equal protection as guaranteed by Article II, Section 4, of the Montana Constitution?
DISCUSSION
¶20 Article VIII, Section 3, of the Montana Constitution, provides that “[t]he state shall appraise, assess, and equalize the valuation of all property which is to be taxed in the manner provided by law.”
¶21 Pursuant to that mandate, the Legislature enacted the following requirement regarding the appraisal of real property in Montana: “The same method of appraisal and assessment shall be used in each county of the state to the end that comparable property with similar true market values and subject to taxation in Montana shall have substantially equal taxable values at the end of each cyclical revaluation program hereinbefore provided.” Section 15-7-112, MCA.
¶22 The Legislature further provided, at § 15-8-111, MCA, that all taxable property must be assessed at 100% ofits market value, except as otherwise provided, and at § 15-9-101(1), MCA, that:
The department shall adjust and equalize the valuation of taxable property among the several counties ... and between individual taxpayers and shall do all things necessary to secure a fair, just, and equitable valuation of all taxable property among counties ... and between individual taxpayers.
¶23 The combined effect of these provisions requires standardized appraisal methods throughout the state with the ultimate goal that the valuation of taxable property be equalized among the various counties in the state and among individual taxpayers, and that once equalized, that property be assessed for tax purposes at 100% of its market value, except as otherwise provided. As part of that statutory framework for appraisal, valuation, and assessment of real property, § 15-7-111, MCA (1995), required that property within the State of Montana be revalued by the Department by December 31, 1996, and revalued at least every three years. However, in 1997, the Montana *246 State Legislature became concerned that general increases in the value of real property throughout the State of Montana would result in substantial increases in those taxes derived from real property, impose a hardship on those property owners whose property had appreciated in value, and produce more revenue to the state than was necessary.[1] Therefore, in 1997, the Legislature amended § 15-7-111, MCA, to include the following phase-in provision which is at issue in this case:
(1) The department of revenue shall administer and supervise a program for the revaluation of all taxable property within classes three, four, and ten. All other property must be revalued annually. The revaluation of class three, four, and ten property is complete on December 31,1996. The amount of the change in valuation from the 1996 base year for each property in classes three, four, and ten must be phased in each year at the rate of2% of the total change in valuation.
(3) Beginning January 1,2007, the department of revenue shall administer and supervise a program for the revaluation of all taxable property within classes three, four, and ten.... The reappraisal plan adopted must provide that all class three, four, and ten property in each county is revalued by January 1, 2010, and each succeeding 3 years.
(Emphasis added.)
¶24 The Legislature’s amendment had the intended effect on those properties which appreciated in value in 1997. Along with reductions in the tax rate at § 15-6-134(2), MCA (1997), and limits on the mills that could be levied at § 15-10-402, MCA (1997), tax increases for those property owners were minimized or avoided. However, for those people in Roosevelt’s situation, tax decreases which would have resulted from the reduction in the market value of property were not *247 fully realized. While property owners whose property increased in value during 1997 are now taxed at less than the market value of their property, Roosevelt’s taxes are assessed on 124% of the market value of his property. The question is whether this result violates Roosevelt’s right to equal protection of the laws guaranteed by Article II, Section 4, of the Montana Constitution.
¶25 The District Court’s conclusion that § 15-7-111(1), MCA (1997), is unconstitutional facially, is a conclusion of law. The standard of review for questions of law is whether they are correct. See Albright v. Department of Revenue (1997), 281 Mont. 196, 206, 933 P.2d 815, 821.
¶26 It is presumed that all legislative enactments are constitutional. The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. See State v. Nye (1997), 283 Mont. 505, 510, 943 P.2d 96, 99.
¶27 When we review legislation for compliance with the Equal Protection Clause, the first and often determinative question is the level of scrutiny to be applied. Strict scrutiny, which requires a compelling state interest for statutory classifications which treat otherwise similarly situated individuals differently, is reserved for those situations where a statutory classification “impermissibly interferes with the exercise of a fundamental right or operates to a peculiar disadvantage of a suspect class.” Arneson v. Department of Admin. (1993), 262 Mont. 269, 272, 864 P.2d 1245, 1247.
¶28 Roosevelt does not contend that he is a member of a suspect class, nor that a fundamental right is involved.
¶29 We have adopted a middle tier of scrutiny where important rights are involved, even though those rights are not considered fundamental. Rights important enough to warrant middle-tier scrutiny, although not considered fundamental, include rights which, although mentioned in the Constitution, are not found in Montana’s Declaration of Rights. See Butte Community Union v. Lewis (1986), 219 Mont. 426, 434, 712 P.2d 1309, 1314.
¶30 Roosevelt contends that the classifications created by § 15-7-111(1), MCA (1997), implicate his constitutional right to equalized valuation guaranteed by Article VIII, Section 3, of the Montana Constitution, and, therefore, that the statute should be scrutinized for compliance with the Equal Protection Clause based on a middle-tier review.
*248 ¶31 In those cases which do not involve classifications which implicate fundamental rights, constitutionally significant interests, or discrimination based on a suspect class, we will review the classification for whether it bears a rational relationship to a legitimate governmental objective. See Arneson, 262 Mont. at 272-73, 864 P.2d at 1248. While the Department does not directly address the appropriate level of scrutiny since its principal contention is that the statute creates no classifications, its secondary arguments assume that the statute will be reviewed for the purpose of determining whether any classifications that it does create are rationally related to a legitimate state interest.
¶32 We conclude that because § 15-7-111(1), MCA (1997), as applied to Roosevelt, is not rationally related to a legitimate state interest, it is not necessary to decide whether a higher level of scrutiny applies to classifications created for the purpose of property tax assessment.
¶33 It is clear to us, as it was to the District Court, that § 15-7-111(1), MCA (1997), results in three classifications of Class Four property taxpayers:
¶34 1. The first class includes those Class Four property owners whose market value declined from 1996 to 1997 and who were, therefore, assessed in 1997 based on a value greater than the market value of their property.
¶35 2. The second class includes those Class Four property owners whose market value did not change from 1996 to 1997 and whose property is, therefore, being assessed based on its actual market value.
¶36 3. The third class includes those Class Four property owners whose property increased in value from 1996 to 1997 and who were, therefore, assessed in 1997 based on a value less than the fair market value of their property.
¶37 The Department points to the Legislature’s concern about a windfall in revenue based on increased property values, and to the statement of purpose found at § 15-10-401, MCA (1997), which provides in relevant part as follows:
(1) The state of Montana’s reliance on the taxation of property to support education and local government has placed an unreasonable burden on the owners of all classes of property described in Title 15, chapter 6, part 1.
*249 (2) Except as provided in 15-10-412, the people of the state of Montana declare that it is the policy of the state of Montana that no further property tax increases be imposed on property.
¶38 Although we agree that there is a legitimate state interest in reducing reliance on property taxes and avoiding further property tax increases, we conclude that taxing property owners, such as Roosevelt, based on 124% of the market value of his property, while taxing others in the state at less than the full market value of their property, is not rationally related to those objectives. Furthermore, we conclude that creating a class of property owners whose taxes are assessed on a basis greater than the market values of their property while other property owners are assessed based on the actual, or less than the actual market values of their property, causes the property owners in the first class to pay a disproportionate share of this state’s property taxes, in violation of the Equal Protection Clause found at Article II, Section 4, of the Montana Constitution, as applied by this Court in Barron and Sheehy. In fact, the effect of the classifications created by the 1997 amendment to § 15-7-111(1), MCA (1997), are very similar to those which this Court held unconstitutional in Barron.
¶39 In Barron, the issue was the constitutionality of a former provision in § 15-7-111, MCA (1989), which provided for “stratified sales assessment ratio studies” and assessments based on the results of those studies. Following the studies, the actual sales prices of residential property in a given area were compared to the appraised values of those same properties for the previous three years. If the average assessed value of property in that area was more than 5% less than the average sales price, or more than 5% greater than the average sales price, then all appraised values were to be adjusted by the percentage of difference to arrive at the property’s taxable value. We noted that the impacts of the adjustment had different effects on different property owners depending on the ratio of the appraised value of that person’s property to the market value of that person’s property and, therefore, that those persons whose appraised value exceeded their market value would be taxed at more than the market value and, therefore, taxed disproportionately. We gave the following example:
It may be demonstrated by the above samples that equalization is not achieved by the application of the 30% factor but rather that any inequality of appraisal is exacerbated by the factor. For example, the first property, which sold for $24,000 in 1989 but was ap *250 praised for $46,497 is now assessed after the application of the factor, at $61,346. That same property was overappraised in relation to its sales price at 193% before the application of the factor, but is overappraised 255% after its application.
Barron, 245 Mont. at 108, 799 P.2d at 538.
¶40 Based on those facts, we held as follows:
We determine, therefore, from the record that the methodology prescribed by the legislature and implemented by the DOR for yearly equalization between areas unfairly discriminates against property taxpayers in Area 2.1 whose properties in 1989 were appraised at or above their market values.
We therefore determine in accord with Larson [v. Department of Revenue (1975), 166 Mont. 449, 534 P.2d 854,] that the use of the 1990 tax values derived from the ratio studies and the application of the 30% factor to residential properties in Area 2.1 require certain taxpayers therein to bear a disproportionate share of Montana’s tax burden in violation of the Equal Protection requirements of the Fourteenth Amendment of the United States Constitution, and Art. II, § 4, 1972 Montana Constitution, and the Due Process requirements of the Fifth and Fourteenth Amendments of the United States Constitution and Art. II, §§ 17 and 29 of the 1972 Montana Constitution. This also violates the appraisal provisions of our statutes which require general and uniform appraisal, assessment and equalization of all taxable property in this state.
Barron, 245 Mont. at 108-11, 799 P.2d at 538-40.
¶41 We conclude that just as the stratified sales assessment ratio methodology referred to in Barron discriminated against properties which were appraised at or above their market value and, therefore, required those property owners to “bear a disproportionate share of Montana’s tax burden, in violation of the equal protection requirements,” § 15-7-111(1), MCA (1997), discriminates against those Class Four property owners whose property declined in value from 1996 to 1997, and requires that they bear a disproportionate share of Montana’s tax burden, in violation of Article II, Section 4’s requirement that Montana’s citizens be provided with equal protection of the laws.
¶42 The Department contends that the United States Supreme Court’s decision in Nordlinger v. Hahn (1992), 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1, requires that we conclude that the 2% phase-in *251 provision enacted in 1997 does not violate Roosevelt’s right to equal protection.
¶43 In Nordlinger, the issue was whether California’s constitutional requirement that real property be taxed at its “acquisition value,” rather than its current market value, unfairly discriminated against recent property purchasers in favor of those owning similar pieces of property, but which had been purchased years earlier at a lower price. The Supreme Court held that California had demonstrated at least two rational bases for its “acquisition value” system of taxation. It concluded that the state had a legitimate interest in local neighborhood preservation, continuity, and stability which was furthered by permitting longer term owners to pay progressively less than new owners of comparable property, and it held that the state could legitimately conclude that a new owner of property does not have the same degree of reliance on protection against higher taxes as does an existing owner. See Nordlinger, 505 U.S. at 12, 112 S. Ct. at 2333, 120 L. Ed. 2d at 13-14. Nordlinger is distinguishable from this case for two reasons. First, Montana does not have an “acquisition value” system of taxation. Second, as we have previously held, this state’s discriminatory treatment of Roosevelt is not reasonably related to its obj ective of avoiding tax increases.
¶44 We conclude that to the extent that federal authority is persuasive, the United States Supreme Court’s decision in Allegheny Pittsburgh Coal Co. v. County Commissioners of Webster County, West Virginia (1989), 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688, is more closely on point. In that case, the tax assessor for Webster County, West Virginia, assessed property at 50% of its appraised value, but fixed appraised value at the consideration for which the property had last sold. When properties had not sold recently, some adjustment was made, but the adjustment was not comparable to actual increase in market value. The Supreme Court noted that “[tjhis approach systematically produced dramatic differences in valuation between petitioners’ recently transferred property and otherwise comparable surrounding land.” Allegheny, 488 U.S. at 341, 109 S. Ct. at 637, 102 L. Ed. 2d at 695.
¶45 Without any indication that West Virginia’s tax system was based on “acquisition value,” or that the state of West Virginia had demonstrated a rational basis for the discriminatory treatment of property owners in the petitioner’s position, the Court held that the county assessor’s method of arriving at market value violated the *252 Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See Allegheny, 488 U.S. at 343, 109 S. Ct. at 637, 102 L. Ed. 2d at 696. In language relevant to this case, the Supreme Court held that:
The use of a general adjustment as a transitional substitute for an individual reappraisal violates no constitutional command. As long as general adjustments are accurate enough over a short period of time to equalize the differences in proportion between the assessments of a class of property holders, the Equal Protection Clause is satisfied. Just as that Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes, it does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.
Allegheny, 488 U.S. at 343, 109 S. Ct. at 638, 102 L. Ed. 2d at 697 (citations omitted). Likewise, we conclude that general adjustments over a short period of time to equalize the treatment of similarly situated property holders is permissible. However, pursuant to our Constitution, seasonable attainment of the equality is required. The 2% phase-in provision at issue in this case does not adjust values over a short period of time and does not result in seasonable attainment of equality in tax treatment of similarly situated property owners.
¶46 We therefore affirm the District Court’s judgment to the extent that it concluded that § 15-7-111(1), MCA (1997), as applied to Theodore Roosevelt, IV, violates his right to equal protection of the laws. However, we reverse that part of the District Court’s judgment which held that § 15-7-111( 1), MCA (1997), is unconstitutional on its face. To violate equal protection “on its face” means that “the law by its own terms classifies persons for different treatment.” Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 18.4 (2d ed. 1992). In this case, the terms of§ 15-7-111(1), MCA (1997), make no specific classifications. On its face, the statute is neutral. However, as applied to the three classes previously described, the statute imposes different burdens on each class. Therefore, our holding in this case is limited to our conclusion that § 15-7-111(1), MCA (1997), is discriminatory and, therefore, violates the right to equal protection, as applied to the petitioner.
¶47 Nor are we inclined to speculate about the constitutionality of the statute as applied to other classes of taxpayers. Other than for ex *253 ceptional circumstances, which are not present in this case, we are limited in our decision-making authority to decide the issues raised by those cases or controversies presented to us. Based on our former Constitution, we have concluded that we are as limited as the federal courts to cases or controversies. In Hardy v. Krutzfeldt (1983), 206 Mont. 521, 672 P.2d 274, we explained that:
“The judicial power vested in the district courts and the Supreme Court of Montana, by the provisions of the Montana Constitution, extend to such ‘cases at law and in equity’ as are within the judicial cognizance of the state sovereignty. Article 8, secs. 3, 11, [1889 Montana Constitution.] By ‘cases’ and ‘controversies’ within the judicial power to determine, is meant real controversies and not abstract differences of opinion or moot questions. Neither federal nor state Constitution has granted such power.”
Hardy, 206 Mont. at 526, 672 P.2d at 276 (quoting Chovanak v. Matthews (1948), 120 Mont. 520, 525-26, 188 P.2d 582, 584).
¶48 We have followed this same principle of judicial restraint since the adoption of our new Constitution in Olson v. Department of Revenue (1986), 223 Mont. 464, 726 P.2d 1162. There we stated that:
At the threshold of every case, especially those where a statutory or constitutional violation is claimed to have occurred, is the requirement that the plaintiff allege “such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation ofissues ...’’ Baker v. Carr (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678. This principle is generally referred to as standing to sue, and there are two distinct bases upon which standing rests. The first is the constitutional provision which extends original jurisdiction of the District Court to “cases at law and in equity.” Art. VII, Sec. 4, 1972 Mont. Const. This provision has been interpreted as embodying the same limitations as are imposed by federal courts under the Article 3 “case or controversy” provision of the United States Constitution. See, Stewart v. Bd. of Cty. Com’rs of Big Horn Cty. (1977), 175 Mont. 197, 573 P.2d 184. The second base of the doctrine is one of judicial self-restraint imposed for reasons of policy.
Olson, 223 Mont. at 469-70 726 P.2d at 1166 (emphasis added).
¶49 The application of judicial restraint, derived from the Federal Constitution’s requirement of a case or controversy, as applied to the issue of whether a statute should be found facially invalid, rather than as applied to the facts before the Court, is illustrated in the *254 United States Supreme Court’s decision in United States v. Raines (1960), 362 U.S. 17, 80 S. Ct. 519, 4 L. Ed. 2d 524. In that case, the United States prosecuted the board of registrars and various deputy registrars in Terrell County, Georgia, for discrimination on racial grounds against some persons who attempted to vote in state elections. The prosecution was based on provisions of the Civil Rights Act of 1957, which guaranteed the right to vote without regard to race, and granted the Attorney General authority to bring an action to enjoin the conduct of any person who would deprive another person of that right. The Federal District Court held the statute unconstitutional because it allowed the United States to enjoin purely private action, even though the complaint was based on only official action. The District Court held that because the statute on its face was susceptible of application beyond the scope of the Fifteenth Amendment, it was invalid in all its applications. The U.S. Supreme Court explained its decision to reverse the district court in the following language applicable to this case:
This Court, as is the case with all federal courts, “has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.” ... Very significant is the incontrovertible proposition that it “would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.” The delicate power of pronouncing an Act of Congress unconstitutional is hot to be exercised with reference to hypothetical cases thus imagined. The Court further pointed to the fact that a limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were in fact concretely presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.
*255 Raines, 362 U.S. at 21-22, 80 S. Ct. at 522-23, 4 L. Ed. 2d at 529-30 (citations omitted).
¶50 Likewise, we will not anticipate every conceivable fact situation to which the 1997 phase-in provision at issue could be applied and whether that statute is rationally related to the state’s objective under those circumstances. We limit our holding to the facts before us and to those similarly situated Class Four property taxpayers whose actual market value declined from 1996 to 1997.
SUMMARY
¶51 Because Roosevelt’s property declined in value from 1996 to 1997, and because he is denied full recognition of that decline in value for purposes of assessment pursuant to the phase-in provision in § 15-7-111(1), MCA (1997), Roosevelt’s 1997 property taxes are based on more than the market value of his property, while the property taxes of other property owners whose property did not decline in value are based on either market value or less than market value. We conclude that creating a class of property owners whose taxes are assessed on a basis greater than the market values of their property while other property owners are assessed based on the actual or less than the actual market values of their property, causes the property owners in the first class to pay a disproportionate share of this state’s property taxes, in violation of the right to equal protection of the laws guaranteed by Article II, Section 4, of the Montana Constitution. Therefore, § 15-7-111(1), MCA (1997), as applied to Roosevelt, is unconstitutional and he and other similarly situated Class Four property owners are entitled to be assessed at the actual 1997 market value of their property for the purpose of calculating their 1997 property taxes.
¶52 This holding is limited to the facts before us and to similarly situated. Class Four property owners whose property actually declined in value for 1996 to 1997. We reverse that part of the District Court judgment which held that the phase-in provisions in § 15-7-111(1), MCA (1997), are unconstitutional on their face. Whether the statute is unconstitutional as applied to other classes of property taxpayers depends on facts which are not before us and about which we decline to speculate. The constitutionality of § 15-7-111(1), MCA (1997), as applied to other classes of taxpayers, will have to await an actual case or controversy involving one of the members of those classes.
*256 ¶53 We affirm the judgment of the District Court in part and reverse in part, and remand to the District Court for entry of judgment consistent with this opinion.
JUSTICES REGNIER, HUNT and GRAY concur.

. For example, the following testimony was offered to the Senate Committee on Taxation on behalf of the Governor’s Office:
The governor indicated that “Clearly, the property tax situation has urgently seized our immediate attention and will not escape remediation.” He went on to indicate that “We will come to grips with the projected and unacceptable property tax increases.”
Those statements, as well as the targeting for tax relief of the $85 million of increased property taxes flowing to the state as a result of the 1997 reappraisal, demonstrate the governor’s continued commitment toward fairness and equity in Montana’s property tax system.
See Hearing on S.B. 195 before the Senate Committee on Taxation (Jan. 24,1997) (testimony of Mick Robinson, Office of the Governor).