JUSTICE NELSON
concurs:
¶72 I write separately to respond to Justice Gray’s dissent. As a general proposition, I do not disagree with her concern about this Court deciding cases on the basis of theories and arguments neither made in the trial court nor advanced by the parties. That is the general rule to which we adhere in the vast number of cases. Moreover, without fear of contradiction, I know that each member of the present Court has, in one case or another, taken exactly the same position as does Justice Gray in her dissent. In this regard, Justice Gray cites my special concurrence in State v. Zabawa (1996), 279 Mont. 307, 318, 928 P.2d 151, 158. That concurrence still correctly sets forth my view.
¶73 However, I also know without much fear of contradiction that each member of the present Court has, at one time or another and for reasons that were apparently persuasive to the individual Justice at the time, authored or signed opinions where these general principles of appellate practice were not followed. See, for example, our recent decision in Roosevelt v. Montana Dept. of Revenue, 1999 MT 30, 293 Mont. 240, 975 P.2d 295, wherein the majority, which included the dissenting Justice here, decided the case on a theory neither raised nor argued by either party nor advanced in the trial court. Roosevelt, ¶ 67 (Nelson, J., dissenting). No doubt the Justices in the majority of that decision determined that there were valid reasons for deciding the case as they did, and in support of the opinion, Justice Gray defends her vote in Roosevelt by reiterating the majority’s rationale for not following the rule that she now so staunchly defends. However, regardless of whether those reasons were correct (and I continue to maintain they were not), robing the majority opinion in the mantle of judicial restraint does not alter the undisputed fact that no party to that case argued equal protection “as applied” to the District Court or to this Court on appeal, nor did the trial court rule on that basis — and, in my view, for good reason. Roosevelt, ¶¶ 77-78 (Nelson, J., dissenting).
¶74 While Justice Gray and I can agree to disagree on the rationale for deciding Roosevelt, I cannot understand the logic underpinning her willingness to wink at the rule in a tax case raising an equal protection issue involving the lowest level of judicial scrutiny, but, here, *461 in a case where the legal precedents at issue are concededly in error, she finds it is acceptable— even requires — that the accused’s fundamental constitutional right to be free from unreasonable searches and seizures be sacrificed on the altar of a convention of appellate practice. In my view, at least, the substance of the law demands more.
¶75 That aside, there is ample justification in the case sub judice for our not following the general principles cited by Justice Gray. Obviously, it is always preferable that the theories and arguments on which cases are decided be advanced by the parties and raised in the trial court. This is particularly true where there is no precedent addressing the legal argument or theory on which we seek to decide the case. However, when this Court once decides a case based upon an erroneous articulation and adoption of a principle or theory of law — as we did in Sykes — and when we then reaffirm that error in subsequent cases — as we did in Mosley and Feland — there is little likelihood the practicing bar will challenge the erroneous theory or principle or that a trial court will simply ignore the offending precedent.
¶76 Justice Gray believes that the solution is simply to “sow the seeds” of change in a dissent or concurrence. For the most part, I agree, and, as it did in the two cases she cites, often that works. The case at bar, however, proves the necessity for the occasional exception to this approach.
¶77 As the majority opinion points out, we adopted the Franks procedure in Sykes. In Mosley, Justice Trieweiler “sowed the seeds” of change in his special concurrence and dissent by pointing out the error of following Franks and suggesting an alternate approach. Justice Gray joined Justice Trieweiler’s separate opinion. The seeds sown by Justice Trieweiler fell on barren ground, however. In Feland, an opinion authored by Justice Gray for a majority which included this writer, we ignored Justice Trieweiler’s invitation in Mosley to modify and correct our prior two precedents. Justice Trieweiler again wrote separately.
¶78 While, admittedly, my experience in agriculture is limited, I do know enough to recognize that when you twice experience crop failure, sowing seed for a third time in the same field is not likely to produce a bountiful harvest. The same is true in the law. When “sowing the seed” of change fails to produce the crop of new arguments hoped for, it is more judicious to simply abandon the unproductive field for more fertile soil. It accomplishes nothing to continue to plow the same barren ground. Worse, doing so simply adds layers of supportive pre *462 cedent to the lineage of an erroneous decision and increases the reluctance to and difficulty in setting straight the law.
¶79 Moreover, to expect that “sowing the seeds” of change in a separate opinion will encourage the bench and bar to challenge mounting precedent which rejects the suggested alternate approach, exemplifies the triumph of hope over experience. In fact, there is a real disincentive for challenging clear authority articulated in a recently decided line of cases where the challenge is based upon an approach and theory previously set out in separate opinions at least twice rejected by a majority of the Court. The downside of challenging the law under such circumstances is that lawyers may subject themselves to Rule 11, M.R.Civ.R, and Rule 32, M.R.App.P., sanctions and the trial court risks almost certain reversal. While Justice Gray would minimize this risk, I suggest that the practitioner may not be so quickly willing to risk his or her credibility — and pocketbook — on what might well be deemed a bad faith argument or frivolous appeal. Nor is it likely that the trial judge will be anxious to go out on a limb knowing that we will almost certainly saw it off behind him or her because of stare decisis.
¶80 Justice Gray correctly notes that in Feland no party asked us to correct the error discussed in the Mosley dissent. And that is exactly my point. In Mosley the error was raised —i.e, the seeds were sown. The defense did not argue the Mosley dissent in Feland, however. Again Justice Trieweiler raised the error in a separate opinion. Feland, 267 Mont. at 116-18, 882 P.2d at 502-03. Nevertheless, honoring the doctrine of stare decisis, we dutifully followed our prior precedent, Sykes and Mosley. Feland, 267 Mont. at 115, 882 P.2d at 501-02. Now, in the case at bar, we are faced with this situation for a third time. Does some member of the Court write yet another dissent in the hope that the fourth — or fifth, or sixth ... or tenth case — may be the charm? Or do we exercise our fundamental obligation to determine and articulate a correct statement of the law regardless of whether the practicing bar “perceives” the problem, as suggested by Justice Gray, or, more likely, whether the attorneys simply choose to ignore-the issue because we have twice rejected the argument that would have to be made?
¶81 Purely and simply, there comes a point, as in the case at bar and in Craig v. Schell, 1999 MT 40, 293 Mont. 323, 975 P.2d 820, to which Justice Gray alludes, where principles of stare decisis do not justify compounding the error in the hope that some attorney or some trial court will have the moral fortitude to raise the challenge in a future *463 case. Stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment. Formicove, Inc. v. Burlington Northern, Inc. (1983), 207 Mont. 189, 194, 673 P.2d 469, 472. Justice Gray’s opinion to the contrary, no member of the Court who has signed the majority opinion here has “cavalierly’ ignored this important doctrine. However,
[c]ourt decisions are not sacrosanct... and stare decisis is “not a mechanical formula of adherence to the latest decision.” Indeed, we have held that stare decisis does not require us to follow a manifestly wrong decision.
State v. Gatts (1996), 279 Mont. 42, 51, 928 P.2d 114, 119 (citations omitted).
¶82 Sykes, Mosley and Feland were wrong. Even the dissent acknowledges that. It is time these decisions were taken off life support.