GORDON PENLAND, ET AL., PLAINTIFFS AND APPELLANTS, v. THE CITY OF MISSOULA, A MONTANA MUNICIPAL CORPO-RATION, ET AL., DEFENDANTS AND RESPONDENTS, AND GEORGE R. FAHNESTOCK, ET AL., PETITIONERS FOR INTERVENTION.

No. 9741.
Submitted October 10, 1957. Decided December 2, 1957.
Rehearing Denied December 27, 1957.
318 Pac. (2d) 1089.

Mr. Anthony F. Keast, Missoula, Mr. Leif Erickson and Mr. Jerrold R. Richards, Helena, for appellants.

Mr. Fred W. Schilling, Missoula, for respondents.

Mr. Keast, Mr. Erickson and Mr. Schilling argued orally.

HON. JACK R. LOUCKS, District Judge (sitting in place of MR. JUSTICE CASTLES, who deemed himself disqualified).

This is an appeal by the plaintiffs, Gordon Penland, a resident freeholder of certain land lying within Missoula County, Montana, and other resident freeholders similarly situated, from a judgment rendered by the District Court of the Fourth Judicial district of the State of Montana, in favor of the defendants, The City of Missoula, Montana, a municipal corporation, James A. Hart, Mayor, and Commissioners Allan Bradley, Grace Martel, Sandy Durrant, and F. Gordon Reynolds.

The Facts: On June 25, 1956, the defendants passed a resolution of intention to annex certain land lying outside the City of Missoula. The resolution of intention stated that a petition

had been filed by certain resident freeholders of the area sought to be annexed; that "in the judgment of the Commission of the City of Missoula, it is deemed to be for the best interest of the City of Missoula and the inhabitants thereof and the inhabitants of the platted tracts hereinafter described in which said platted tracts are contiguous to the corporate limits of the City of Missoula that the corporate limits of the City of Missoula be extended to include said platted tracts within the corporate limits of the City of Missoula," then the area sought to be annexed is fully described. The petition states that the official plats of land are on file in the office of the Clerk and Recorder of Missoula County, and further resolves that the City Clerk publish in the newspaper nearest the platted land, once a week for two successive weeks a notice as required by law that the resolution had been duly passed and that "for twenty days after the first publication of this notice expressions of approval, or disapproval, in writing, will be received by said City Clerk."

The notice was published for the first time on June 29, 1956, and again on July 6, 1956. On July 16, 1956, the plaintiffs filed a petition for injunctive relief against the defendants from acting upon the said resolution of intention. The grounds upon which plaintiffs based their petition were: that the lands sought to be annexed were not contiguous or platted; that it was not to the best interests of the petitioners that they be included within the City of Missoula; that twenty days given in the notice of the resolution of intention was not sufficient time in which to obtain all the written statements of disapproval from the inhabitants of the area sought to be annexed; and that the inhabitants of the area should be given an opportunity to protest. The petitioners then allege that if injunctive relief is not granted, great and irreparable injury would result; in effect that the resolution would be approved by the defendants before the plaintiffs had a chance to protest the same.

On July 17 the District Court issued an order to show cause and temporary restraining order. Defendants filed a motion to quash which was overruled, and the case went to trial on August

3, 1956. After evidence and testimony had been offered by defendants and plaintiffs, the court made findings of fact and conclusions of law in favor of the defendants, finally decreeing the temporary restraining order be vacated and of no further force and effect.

The plaintiff thereupon petitioned this court for a temporary restraining order on September 7, 1956, pending appeal of the District Court's decision. On December 14, 1956, this court granted the requested order.

Although plaintiffs set out five specifications of error, they devolve into only two issues: (1) Did the defendants exercise their discretionary powers in an arbitrary, capricious or unreasonable manner? (2) Were the lands sought to be annexed, platted and were they contiguous to the City of Missoula?

In the lower court, the Honorable C. E. Comer allowed defendants and plaintiffs much leeway in testifying as to the benefits of being inside or outside the city limits of Missoula. Near the conclusion of the case however, the court made a decision on the admission and relevancy of all the testimony adduced by both parties on this point by stating: ''Now, we have let in a lot of evidence here, pro and con, as this witness says, by the proponents and by those who are opposed to the annexation as to benefits to be derived, and if we go on now in this way, and all of them testify, we will be here a month.

''It seems to me we have now arrived at a place where we have to make a decision on the question where does the jurisdiction lie to determine whether or not the annexation shall be made. Now, it says here [quoting from section 11-403, R.C.M., 1947], 'When, in the judgment of any city council of a city of the first class, expressed by resolution duly and regularly passed and adopted, it will be to the best interest of such city and the inhabitants thereof, and of the inhabitants of any contiguous platted tracts or parcels of land, as aforesaid, that the boundaries of such city shall be extended, so as to include the same within the corporate limits thereof, the city clerk of such city shall forthwith cause to be published in the newspaper published

nearest such platted tracts   \*   \*   \*'   Now, it occurs to me that all that is before this court are questions of law as to whether or not the city has proceeded legally and in accordance with this section.''

Judge Comer thereupon excluded all evidence relating to ▉▉▉▉ benefits upon the ground that it clearly appeared under section 11-403, supra, that it was a matter for the commissioners of the city to decide as to whether or not it was in the best interests of the City and the inhabitants of the area to be annexed.

With this statement this court agrees. Since the legislature ▉▉▉▉ has set down the manner in which a city may annex outlying territory, and has expressly given the city council the discretion to determine whether or not it is in the best interests of both groups, the exercise of that discretion may be reviewed by a court only when, and if, they have proceeded contrary to statute.

Section 11-403 provides a method by which a city may annex outlying territory. Before land may be annexed the following must obtain: (1) They are platted and the plat filed in the county clerk and recorder's office; (2) they are contiguous; (3) when, in the judgment of the city council it is for the best interests of both groups; (4) the council's judgment is expressed by resolution; (5) duly and regularly passed and adopted; (6) notice thereof published once a week for two successive weeks; (7) the notice contains wording to the effect the city clerk will receive written expressions of approval or disapproval from resident freeholders of the area for twenty days following the first publication of notice, and (8) the city council then passes the resolution if a majority of the resident freeholders do not disapprove the annexation in writing.

At the trial of the action it was established that the city council had taken steps three to seven. They followed the statute to the letter in regard to those requirements. Nor is there any showing in the record, assuming arguendo the evidence was relevant and material, that the city council merely acted upon

their own whim or caprice in adopting the resolution of intention, for as was shown at the trial there were 411 resident freeholders of the area sought to be annexed, who petitioned the city council to annex the areas they lived in. Although no such showing of good faith is necessary, this fact certainly shows that the city council did act in good faith and with the best interests of the outlying area in mind.

When the legislature in section 11-403 allowed city councils to weigh the interests involved in annexing or refusing annexation they did not contemplate courts of law substituting their judgment for that of the city council's. Had they desired such a result it would have been an easy matter to have provided for that contingency. The method the legislature had provided for residents of an area sought to be annexed to register disapproval is provided for in section 11-403, by showing such disapproval in writing to the city clerk, not in courts of law.

This court agrees with plaintiffs' citation of authority on the proposition that a municipality has only those powers expressly granted or necessarily implied. Sharkey v. City of Butte, 52 Mont. 16, 19, 155 Pac. 266; State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 Pac. (2d) 915. Whenever there is a fair and reasonable doubt of the existence of a particular power the doubt will be resolved against the municipality and the exercise of the power withheld. Sharkey v. City of Butte, supra, 52 Mont. at page 19, 155 Pac. at page 266.

Counsel for plaintiffs at trial and in his petition attempted to show that the twenty days provided in the statute for recording the inhabitants' approval or disapproval of the annexation, was insufficient. In this regard, it should be noted that plaintiffs admitted on trial that their expressions of disapproval were not obtained within the twenty day limitation. The legislature has expressly stated that written expressions of approval or disapproval will be received within twenty days after the first publication of the notice of intention. Petitioners failed to comply with this mandate and the courts are not

permitted to extend the time limitation. State ex rel. Koefod v. Board of Com'rs of Hill County, 56 Mont. 355, 185 Pac. 147; State ex rel. Murray v. Walker, 64 Mont. 215, 210 Pac. 90.

We are now called upon to determine whether or not the land sought to be annexed was platted and contiguous to the City of Missoula. R.C.M. 1947, section 11-404, provides: "Tracts or parcels of land, proposed to be annexed to a city or town, under the provisions of section 11-403, shall be deemed contiguous to such city or town, even though such tracts or parcels of land may be separated from such city or town by a street or other roadway, irrigation ditch, drainage ditch, or a strip of unplatted land too narrow or too small to be platted."

In the instant case there is a triangular piece of land which separates the area sought to be annexed into two tracts of land. This triangular piece of land is unplatted. Although the triangular strip is a part of a much larger tract, that fact is immaterial since section 11-404, supra states that if the land sought to be annexed is separated by a strip too narrow or too small to be platted then the area will be deemed contiguous. It follows from the provisions of section 11-404 that the only part of the land which is significant is the strip separating the area sought to be annexed, not the larger area of which the separating strip is a part. Therefore, if this triangular separating strip falls within the purview of section 11-404, as being too narrow or too small to be platted, then the tracts separated by it will be deemed contiguous.

By the testimony of plaintiffs and defendants, the triangular strip of land contains 19,676½ square feet. However, as pointed out by both parties there is a stream which meanders through the tract, thus decreasing the area which could be built upon. This creek is quite significant in determining just how much of the triangular strip could be platted because as pointed out by plaintiffs' own witness, "There is no way of telling where that creek is going to be two or three years from now. Since I been out there the course has been changed two or three times. * * * I don't know what the outcome is going to finally be on this

drainage for this Willows, because that creek really does go like a river sometimes.''

Mr. Walton Taylor, City Manager of Missoula, testified:

''Q. As your duty of director of Public Service, is this tract of land susceptible of being platted in regards to the streets and alleys, conterminous? A. It is not susceptible of being platted, because every foot of it is dedicated under this easement.

''Q. And it's dedicated to a public highway? A. That is correct.

''Q. What is meant by conterminous? A. Conterminous —Is defined by Webster as having the same boundaries in space, and it's a queer kind of a word. * * *

''Q. To cut it short, does that mean that these streets and alleys must project further to meet this street? A. That is correct; that is to say, when anyone offers a plat of land which —offers a plat of unplatted land which lies next to land already platted, the person offering is under the burden [of] seeing to it that the streets in the abutting plat, already platted, must continue across in some kind of orderly way, so that you do not find yourself in a situation in which you have no through streets, and they are all dead-ended without the public traversing of those streets from one end of the street to another end of a street.

''Q. Is this tract of land also subject to an easement of 50 feet, we will say, down the side? A. It is.

''Q. Now is it possible, after this street is extended over here, after this alley is extended over here, after this street is extended down here, and this waterway for the Pattee Creek is taken care of, is there anything left for the plat? A. No, sir.

''Q. For what reason, is it too small or too narrow? A. It then becomes too small, and of such a shape that no property— no improvement can be built upon it. The land as measured by Mr. Stanley, whose name is signed to this retracement, contains 19,676½ square feet. Deduct 50 feet to allow for Higgins Avenue to come down to this point, knock off some 7,000 square feet so that the remaining territory is 12,325 square feet. Extend Pattee Creek Avenue through to meet Pattee Canyon Road

at this point which goes to the south, and another 4,250 square feet disappears, which leaves a remainder of 8,000-some-odd square feet. Take the alley out, and another thousand square feet disappears, leaving one piece of land very minor and small in shape, which could not be built upon north of the projected alley line of the alley in block 6, Elms Addition No. 2, which would be entirely too small to construct anything upon, even a garage. And there remains only a piece of land bordering Pattee Canyon Road containing approximately 3,700 square feet, and lacking sufficient depth because of its triangular shape. You would have to build a house that would have to come to a point in two directions in order to have any structure on it, and you would not have any yard space left.

"Q. Now, in view of that, and in view of this deed which subjects all this land to a public highway, regardless, under the terms of this deed, this is all subject to an easement for public highway; is it possible to plat a piece of land subject to an easement for a public highway? A. No sir, no such plat would be accepted."

In the light of the above testimony, which is unrefuted, and the fact that the trial judge personally viewed the lands in question, we cannot say that it was an abuse of discretion for the trial court to reach the conclusion it did.

Plaintiffs cite many cases in which courts have interpreted the word contiguous as meaning touching or bordering upon. These cases would be relevant were it not for the fact our statute is qualified by what is said in section 11-404.

The temporary restraining order heretofore issued by this court is vacated, and the trial court's order vacating the temporary restraining order issued by it is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ANGSTMAN and ADAIR, concur.

MR. JUSTICE BOTTOMLY, dissents.