JUSTICE BAKER
delivered the Opinion of the Court.
¶1 Plaintiffs Musselshell Ranch Company and Cooley Ranch appeal the order of the Fourteenth Judicial District Court, Musselshell County, allowing a culvert and rock bridge placed in their irrigation ditch (the ‘Cooley-Goffena”ditch) by Defendants (“Joukova”) to remain in the ditch. The District Court concluded the structure did not unreasonably interfere with plaintiffs’ easement rights in the ditch. We reverse. We consider the following issue on appeal:
¶2 Whether the District Court erred in allowing Joukova’s culvert and rock bridge to remain in the Cooley-Goffena irrigation ditch.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 The Cooley-Goffena irrigation ditch has been diverting water from the Musselshell River for over a century. The original owners, George Handel and John Cooley, claimed water rights through use of the ditch in 1891 and 1892. At some point prior to 1949, Handel’s interest was acquired by the Goffena family, the owners of the Musselshell Ranch Company, resulting in the split ownership of the ditch between the Cooleys and the Goffenas which continues to the present day. The ditch diverts the Musselshell to the north of the river, then continues in a generally easterly direction to its various places of use on plaintiffs’ lands. The Goffenas rely on the water from the ditch to irrigate over 300 hay ground acres, which serve a 30,000 acre cattle operation. They own the rights to approximately four-fifths of the water in the ditch when it is in operation from April to October. The Cooleys also use the ditch to irrigate hay fields for their cattle operation, and own the vast majority of the remainder of the water rights. For purposes of convenience, the Cooleys and Goffenas are hereinafter referred to collectively as ‘MRC.”
¶4 At various times throughout its history, the location of the ditch has been altered to accommodate the needs of large construction projects, notably the construction of the Chicago, Milwaukee, St. Paul & Pacific Railroad in about 1907 and a 2002 road-widening project on *3 U.S. Highway 12. The latter project had a substantial impact on Edwin and Jean Bohlman’s property (now Joukova’s) and the Cooley-Goffena ditch running through it. In April 2002, as part of the road-widening project, the State obtained an easement from the Bohlmans to relocate the ditch to its present location on Joukova’s property and arranged for the easement to be recorded in favor of MRC. The recorded easement does not encompass the entire ditch. The ditch travels across Joukova’s property for about a half-mile, but the recorded easement covers under 200 yards of that length. The easement rights on the remainder of the ditch, including the portion in which the culvert and rock bridge at issue are located, are claimed through historical use and as incidents of ownership of the ditch and water rights. There is no question as to the validity or existence of either the primary ditch easement or secondary easement for ditch maintenance.
¶5 As a result of the relocation, some of the Bohlmans’ land previously made inaccessible by the ditch became dry and useable. An access gate was installed by the State, enabling access to the Bohlmans’ property from Highway 12 for the first time. In 2006, the Bohlmans subdivided their land and sold the property in question to Joukova. The access gate installed in 2002 provided the only route from Highway 12 to the parcel, with the only other legal access through the Bohlmans’ retained land to the north. Shortly after she purchased the property, Joukova graveled the road over opposition from the ditch users, who claimed the access gate was not intended to provide access to Joukova’s property, but rather to the ditch for maintenance purposes alone. Joukova proceeded with construction over MRC’s objections after obtaining a permit from the State to construct an approach from the highway.
¶6 The dispute between the parties flared up again on June 2,2009, when plaintiffs were performing ditch maintenance on Joukova’s property and encountered the newly-installed culvert and bridge. Joukova had placed a culvert in the ditch bottom, and had completely filled in the ditch surrounding the culvert on either side with rock and gravel. She then added several additional feet of rock and gravel above the culvert, up to the height of the ditch bank, to create a sturdy rock bridge across the ditch. Plaintiffs’ maintenance crew was forced to exit the ditch with the bulldozer to go around the bridge. When the crew had finished cleaning out the ditch, they dismantled the east end access gate to exit the property, as Joukova had not unlocked the gate to allow the maintenance crew to continue along the ditch from west to east. Communication between the parties was difficult as Joukova *4 has no phone installed at her property. A confrontation ensued when Joukova and her husband came upon the maintenance crew dismantling the gate. The parties engaged in a spirited discussion of their respective property rights, after which Jeff Goffena departed in such haste that his truck’s wheels spun gravel at Joukova and her husband, breaking Joukova’s glasses.
¶7 The following day, Joukova penned a letter seeking redress for her glasses and demanding that the Goffenas stop questioning her property rights. She sent a copy of the letter to Bud Goffena, as well as to Mary Cooley and the Musselshell County Sheriffs Department. MRC responded through counsel and litigation began soon thereafter. Joukova sought to protect her culvert, bridge and access from the highway. MRC sought to prohibit Joukova from accessing her property from Highway 12 via the improved road along the ditch bank, and sought removal of the bridge and culvert. MRC also sought access to Joukova’s locked east-end gate and reinstallation of the west-end gate removed by Joukova.
¶8 The District Court found credible Joukova’s testimony that she informed plaintiffs of her intention to install the culvert, although plaintiffs ardently disputed this point. The parties did not dispute, however, that Joukova did not receive permission for the installation, either in writing or orally. At most, Joukova argued that she received tacit permission because MRC raised no objections after allegedly being informed. She installed the culvert to the west of the pipeline to access the sliver of her property between the ditch and the highway, which amounts to an acre or so of useable land that she attests is a desirable location to water her horses. Joukova’s culvert is 48 inches wide, slightly larger than the 40-to-47.5-inch cement pipeline installed by the state as part of the road construction.
¶9 The District Court upheld Joukova’s rights to continue using the Highway 12 access and the improved road along the ditch bank, concluding that this use was not inconsistent with MRC’s secondary easement rights. The court further concluded that the culvert and bridge installed in 2009 could remain in place, as they did not “unreasonably interfere” with plaintiffs’ secondary easement rights, “particularly considering that [Joukova] is unable to meaningfully utilize her property lying south of the ditch otherwise and considering that the Plaintiffs have allowed or permitted similar culverts in the past.” The court concluded, however, that Joukova was interfering with MRC’s secondary easement rights in other respects, and ordered Joukova to provide the ditch users with access through the locked gate *5 on the east end of the property and to reinstall the removed gate on the west end. The court therefore declined to award either party attorney’s fees and costs pursuant to §70-17-112(5), MCA, as neither party “prevailed” within the meaning of the statute. MRC does not challenge on appeal the District Court’s denial of fees.
¶10 MRC states in its brief that the other issues decided by the District Court are no longer relevant because Joukova has complied with court orders regarding the two gates and no longer uses the road adjacent to the ditch bank; Joukova disputes this latter point, but in any case these issues were not appealed. MRC appeals only the District Court’s ruling that Joukova’s culvert does not interfere with or encroach upon its secondary easement rights.
STANDARD OF REVIEW
¶11 We review a district court’s findings of fact to determine whether they are clearly erroneous. Stevens v. Novartis Pharms. Corp., 2010 MT 282, ¶ 24, 358 Mont. 474, 247 P.3d 244. We review a district court’s conclusions of law, including its interpretation of statutes, to determine whether those conclusions are correct. Gibson v. Paramount Homes, LLC, 2011 MT 112, ¶ 10, 360 Mont. 421, 253 P.3d 903; Stevens, ¶ 24.
DISCUSSION
¶12 Whether the District Court erred in allowing Joukova’s culvert and rock bridge to remain in the Cooley-Goffena irrigation ditch.

1. Legal Framework.

¶13 In 1981, the Montana Legislature codified the common law principle, commonly known as a “secondary easement,” that an owner of a ditch easement has the right to enter on the servient tenement to maintain the ditch. Section 70-17-112, MCA. Committee members suggested the bill would express “in very specific terms what the case law already provides” and, even in the absence of the law, “anyone with a ditch easement does have a secondary easement and the right to maintain that easement.” Mont. H. Water Comm., H. Bill 596 Executive Session, 47th Legis., Reg. Sess. 2 (Feb. 12, 1981); Hearing on H. Bill 596, Reg. Sess. at 1. Testimony supporting the bill addressed the perceived danger from urban sprawl to ditch easements, made worse by the fact that very few ditch rights are on deeded rights-of-way and real estate developers and new landowners are often unaware of their existence, location, or scope. The statute thus served the twin *6 purposes of codifying secondary easement rights and, more importantly, of increasing the availability of legal remedies by allowing an award of attorney’s fees and costs to the prevailing party. The statute provides in pertinent part:
70-17-112. Interference with canal or ditch easements prohibited. (1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.
(2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.
(3) The provisions of subsection (2) do not apply if the holder of the canal or ditch easement consents in writing to the encroachment or impairment.
(5) If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney’s fees.
As the drafters recognized, secondary easement rights were well-established in the common law and in Montana independent of §70-17-112, MCA. ‘The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a ‘secondary easement,’ a mere incident of the easement ....’’Laden v. Atkeson, 112 Mont. 302, 305-06, 116 P.2d 881, 883 (1941) (citing treatises).
¶14 In construing the requirements of §70-17-112, MCA, we consider our discussion and application of its provisions over the statute’s thirty-year history. “We presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes .... We presume that if the legislature disagreed with our interpretation ... it would have amended the statute accordingly.” Swanson v. Hartford Ins. Co., 2002 MT 81, ¶ 22, 309 Mont. 269, 46 P.2d 584 (internal citation and quotation marks omitted). See also Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction vol. 2B, § 49:5, 32-34 (7th ed., Thomson-Reuters/West 2008) (“Judicial construction of a statute becomes part of the legislation from the time of its enactment.”). Cases decided by this Court after enactment of the statute illustrate that the common law governs determination of the location and scope of the secondary easement.
*7 ¶15 We made clear in Engel v. Gampp, 2000 MT 17, ¶ 43, 298 Mont. 116, 993 P.2d 701, for example, that the seminal 1941 case Laden v. Atkeson still “sets forth the rules governing secondary ditch easements in Montana.” Thus, we explained, the statute does not define “where, how, when and why” the dominant owner may rightfully enter to inspect, repair and maintain the ditch “without unreasonably burdening the servient owner,” or accordingly “whether an encroachment or impairment [of that right] occurred.” Engel, ¶ 10 (emphasis in original). We cited Gabriel v. Wood, 261 Mont. 170, 176-77, 862 P.2d 42, 45-46 (1993), as authority for our observation that any obstruction of an easement must not “ ‘interfere with reasonable use of the right-of-way.’ ” Engel, ¶ 50 (emphasis added). See also Mason v. Garrison, 2000 MT 78, ¶¶ 47-49, 299 Mont. 142, 998 P.2d 531 (fences and garden beds “materially” and “unreasonably” interfered with dominant owners’ easement rights to access and recreate on lakefront). Since a secondary easement is “a mere incident of the easement” (Laden, 112 Mont. at 305-06, 116 P.2d at 883), we apply the same analysis whether the case concerns primary or secondary easement rights. See Engel, ¶¶ 9-10; Mattson v. Mont. Power Co., 2009 MT 286, ¶ 47, 352 Mont. 212, 215 P.3d 675.

2. Nature ofMRC’s Easement.

¶16 Joukova does not challenge the validity ofMRC’s easement. As noted in the statement of facts above, a small portion of MRC’s easement through Joukova’s property was recorded in conjunction with the widening of Highway 12; the culvert and bridge, however, are not located in the part of the ditch covered by this recorded easement. MRC’s rights at issue here, concerning the portion of the ditch that includes the culvert and bridge, are claimed through prescriptive use and as attendant rights to the water right. While MRC’s rights are statutorily recognized in § 70-17-112, MCA, (“[e]ach canal or ditch easement obtained by prescription ... is included within the scope of this section”) they are not created by statute, as the statute itself makes clear in subsection (4): “[n]othing in this section establishes a secondary easement where none existed prior to April 14,1981.”
¶17 Prescriptive easements generally restrict the dominant owner to whatever was in place historically, since the right ‘is governed by the character and extent of the use during” the prescriptive period. Clark v. Heirs & Devisees of Dwyer, 2007 MT 237, ¶ 26, 339 Mont. 197, 170 P.3d 927 (citations omitted); Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land §8.12 (Thomson Reuters 2011); §70-17-106, MCA. MRC’s easement rights thus include both the *8 right to flow a certain amount of water during a prescribed period and, secondarily, the right to maintain the system designed to flow that water as it historically has done.
¶18 MRC’s rights in Joukova’s land must be balanced with Joukova’s own rights as the owner of the fee. In Mattson, we described as “longstanding and well-settled” the principle that “secondary easement rights must be exercised ‘in such a reasonable manner as not to needlessly increase the burden upon’ or do ‘unnecessary injury to’ the servient estate.” Mattson, ¶ 47 (citing Restatement (Third) of Property: Servitudes §4.10 (2000); Laden, 112 Mont. at 306, 116 P.2d at 884; Engel, ¶ 43). Joukova, in turn, may “make use of the land in any lawful manner that [she] chooses, which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate.” Flynn v. Siren, 219 Mont. 359, 361, 711 P.2d 1371, 1372 (1986) (quoting City of Missoula v. Mix, 123 Mont. 365, 372, 214 P.2d 212, 216 (1950)). Historical uses made of the servient tenement during the prescriptive period also bear upon Joukova’s rights in the servient estate. Bruce & Ely, The Law of Easements and Licenses in Land at §§ 8.24, 8.27; 25 Am. Jur. 2d Easements and Licenses §84 (2004) (‘tw]hen the character of an easement is once fixed, no material alterations ordinarily can be made by either the servient owner or the easement owner without the other’s consent.”).

3. Analysis.

¶19 The balancing of rights suggested by these general rules incorporates a standard of reasonableness: whether the servient owner’s us ^unreasonably interferes with the easement rights. Gabriel, 261 Mont. at 178, 862 P.2d at 47. See Bruce & Ely, The Law of Easements and Licenses in Land at § 8.21 (“[although the servient owner is entitled to use the servient land, the owner may not unreasonably interfere with the easement holder’s enjoyment of the servitude.”) (emphasis added). If interference is “slight and immaterial ... it is not objectionable.” 25 Am. Jur. 2d Easements and Licenses §84 (2004). See also Gerald Korngold, Private Land Use Arrangements: Easements, Real Covenants, and Equitable Servitudes §4.06(a) (2d ed., Juris Publg. 2004). Equally clear is that whether interference is reasonable depends on the factual circumstances of each particular case. Gabriel, 261 Mont. at 176-78, 862 P.2d at 45-48; Engel, ¶ 11; Bruce & Ely, The Law of Easements and Licenses in Land at §8.21 (Tw]hether a particular activity by the servient owner constitutes an unreasonable interference is a question of fact, and uniform rules are difficult to formulate.”) (citations omitted).
*9 ¶20 We have recognized that ‘Tw]hat may be considered reasonable is determined in light of the situation of the property and the surrounding circumstances.” Gabriel, 261 Mont. at 176, 862 P.2d at 46. For example, the servient owner’s actions cannot make the easement more ‘inconvenient, costly, or hazardous to use.” Korngold, Private Land Use Arrangements: Easements, Real Covenants, and Equitable Servitudes at § 4.06(a); e.g. Hatfield v. Ark. Western Gas Co., 632 S.W.2d 238, 241 (Ark. App. 1982) (“[t]he owner of the servient estate can do nothing tending to diminish its use or make it more inconvenient or create hazardous conditions”); Beiser v. Hensic, 655 S.W.2d 660, 663 (Mo. App. E. D. 1983). In Flynn v. Siren, we concluded that the placement of a chained gate across an easement unreasonably interfered with the dominant owners’ easement rights. Flynn, 219 Mont. 359, 711 P.2d 1371 (1986). We found dispositive evidence “establishing] that the placing of the gate on the easement created a traffic hazard; that the gate, as installed, was too small to allow the passage of some farm machinery; and that the gate would have reduced [business traffic].” We concluded that the dominant owners were “entitled to an ungated, unbarricaded, unchained, free and unobstructed use of the right-of-way.” Id. at 362, 711 P.2d at 1373.
¶21 We also dealt with the placement of a gate in Stamm v. Kehrer, 222 Mont. 167, 720 P.2d 1194 (1986). We concluded in Stamm that the construction of a fence and installation of a gate-despite the gate never having been locked, and rarely having been closed4mpermissibly interfered with the dominant owner’s easement rights. The new fence and gate, while preserving access to the dominant owner’s garage, cut off her historically-used access from the alley to her lawn. We noted that the dominant owner was an elderly woman, who “testified that the gates were very difficult for her to maneuver.” Id. at 171, 720 P.2d at 1196. Similarly, in Strahan v. Bush, 237 Mont. 265, 773 P.2d 718 (1989), we held a gate unreasonably interfered with the dominant owners’ use, as one owner (a year-round resident) could not “open the gate without assistance, and is therefore restricted in her movement from the property.” Id. at 269, 773 P.2d at 721. The gate also interfered with snow removal and road maintenance, and plainly inconvenienced the dominant owners.
¶22 In contrast, when a gate does not make use of the easement more inconvenient, costly, or hazardous for the dominant owner, no unreasonable interference will be found. It is generally held that “the owner of the servient estate may erect gates across the way if they are constructed so as not to interfere unreasonably with the right of *10 passage.” 25 Am. Jur. 2d Easements and Licenses §88 (2004). This was our conclusion in Gabriel. We noted that the dominant owners did not “use the easement to any significant extent” and observed that the district court had set forth “standards regarding Wood’s gates in order to ensure the [dominant owners’] reasonable access.” Gabriel, 261 Mont. at 177, 862 P.2d at 46-47. Likewise, other uses not affecting the dominant owner’s use of an easement will not trigger a finding of unreasonable interference. In Boylan v. Van Dyke, 247 Mont. 259, 263-65, 806 P.2d 1024, 1026-27 (1991), we upheld a finding that the servient owner’s construction of a pond did not interfere with the dominant owner’s ditch easement, even though a dam had been placed across the ditch. Our decision was based on the district court’s determination that the pond did not interfere with the flow of water through the ditch and had actually facilitated maintenance of the ditch. See also Titeca v. State, 194 Mont. 209, 634 P.2d 1156 (1981) (use of road by public did not interfere with dominant owner’s use of road).
¶23 Forcing the dominant owner to defend an easement right in court also may constitute unreasonable interference with the right. Kephart v. Portmann, 259 Mont. 232, 239, 855 P.2d 120, 124 (1993); Byrum v. Andren, 2007 MT 107, ¶¶ 47-50, 337 Mont. 167, 159 P.3d 1062. That claim has not been raised by MRC which, as noted, challenges on appeal only the installation of the culvert and bridge.
¶24 The ditch owners in the present case testified to the inconvenient and hazardous new route that Joukova’s culvert forced them to take when performing maintenance on the ditch. Unlike other culverts installed with MRC’s permission, Joukova’s culvert is located in an uneven area with heavy growth, making entry and exit from the ditch with heavy equipment difficult. The District Court found that the culvert and bridge did not “obstruct or impede the flow of water” in the ditch-and thus did not impair MRC’s primary easement right. The court also found that having to exit and re-enter the ditch “minimally hindered” and was not “a major imposition” on MRC’s maintenance activities. The court’s conclusion that no unreasonable interference was present failed to take into account the statute’s express prohibition against encroachment, in light of the law’s historical view that permanently obstructing a right of passage is not permitted. Case law makes clear that such a permanent and immovable encroachment constitutes unreasonable interference with the easement right.
¶25 Our gate cases help illustrate this point. Where the obstruction was immovable, such as a chained and locked gate {Flynn) or fixed fence {Stamm), we have concluded that unreasonable interference was *11 present. In contrast, when the obstruction was removable4he gate could be opened and traffic could proceed as normal-we have concluded that the interference was no more than necessary to achieve a reasonable balance of the parties’ property rights. Gabriel, ¶¶ 42, 45-46; Engel, ¶¶ 50, 55.
¶26 ‘The prevailing view is that the owner of a servient estate may not erect any structures that encroach on a right-of-way.” Bruce & Ely, The Law of Easements and Licenses in Land at §8.22 (citing cases). Servient owners “cannot pursue a development plan that encroaches upon a right-of-way even if the dominant owner still has an unobstructed passageway.” Id. at §8.22 (citing Louis W. Epstein Fam. Partn. v. Kmart Corp., 13 F.3d 762, 766-69 (3d Cir. 1994)). “If the improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement ....’’Restatement (Third) of Property: Servitudes §4.9 (2000).
¶27 Some permanent encroachments may not justify a finding of unreasonable interference. The particular facts of a situation are always controlling, and what is reasonable or unreasonable is often a close call. We permitted the dam in Boylan because it did not impede the flow of water or increase the maintenance of the ditch. Boylan, 247 Mont. at 264, 806 P.2d at 1027. See also Marsh v. Pullen, 623 P.2d 1078 (Or. App. 1981) (suggesting that the installation of eight-to-ten-inch speed bumps constituted an unreasonable interference, and concluding that seven-inch speed bumps did not). On the facts present here, we conclude Joukova’s rock bridge and culvert constitutes an unreasonable interference with MRC’s secondary easement rights. MRC’s reasonable secondary easement rights to enter the ditch for repair and maintenance have been impaired and encroached upon.
¶28 Furthermore, the public policy espoused in §70-17-112, MCA, does not countenance the installation of culverts such as Joukova’s absent written permission from the easement holder. Tacit permission is insufficient. Glenn v. Grosfield, 274 Mont. 192, 196, 906 P.2d 201, 204 (1995). As one court put it when confronted with a servient owner’s filling of land subject to the United States’ flowage easement:
[T]he Government does not have the burden of showing the impact of the fill material placed on the easement by [the servient owner] on the operation of the flowage easement and the impoundment of flood water in the Grapevine Reservoir. If every land owner whose property is encumbered by a flowage easement *12 acquired by the Government for the [reservoir] placed fill material in the easement, it is obvious that the Government’s ability to impound flood water would be seriously impaired.
U.S. v. Austin Two Tracts, L.P., 239 F. Supp. 2d 640, 643 (E.D. Tex. 2002).
¶29 Analogizing to the present case, if every landowner whose property is encumbered by a ditch easement placed culverts in the ditch, it is obvious the ditch owners’ ability to exercise their secondary easement rights to maintain the ditch would be seriously impaired. Though Joukova complains that having to exit and re-enter the ditch at one point along the maintenance route is not a material inconvenience, we cannot condone Joukova’s unilateral installation of the culvert and rock bridge simply because other landowners along the ditch have not followed suit.
¶30 We therefore cannot agree with the District Court that the placement of the permanent, irremovable culvert and rock bridge did not interfere with or encroach on MRC’s secondary easement rights. Joukova has erected a structure that prevents normal, historic use of that portion of the secondary easement, thereby violating §70-17-112, MCA. MRC is entitled to removal of the culvert and bridge. Joukova cannot be deprived of her rights to use her land currently accessed via the rock bridge, but she is required to make use of this land in a manner that does not impair the rights held in the land by MRC. Joukova may seek other alternatives for access to this portion of her property, short of erecting a permanent structure in the ditch bed. Accordingly, we reverse the District Court and remand for entry of an order directing removal of the culvert and bridge.
¶31 While the Dissent agrees the culvert and bridge must be removed, it “strenuously” objects to the proposition that the law obliges dominant and servient owners to be reasonable with one another. As we stated in Mattson, however, “[r]ights must be exercised with reference to the rights of others.” Mattson, ¶ 47. A dominant owner’s secondary easement rights are “confined by the responsibility of not unreasonably burdening the servient owner.” Engel, ¶ 50. It is easy in the abstract to think that interpreting the statute-for the first time-to create an absolute bar to any disturbance in a ditch, no matter how slight, will diminish conflicts between landowners and relieve the courts from easement disputes. But had the Dissent’s hard-and-fast rule been applied in Byrum, for example, we would have been compelled to reverse, rather than affirm, the district court’s ruling that the servient owners had not physically interfered with the dominant *13 owners’ ditch easement by “occasionally blocking]” the dominant owners from using the headgates on the ditch, though they eventually allowed access. Byrum, ¶ 46. Our ruling today upholds MRC’s secondary easement to maintain its ditch as is reasonable and as it historically has done. Section 70-17-106, MCA. This ruling applies the letter of the law in harmony with the well-settled principles that have guided this Court’s interpretation of easement disputes for decades.
CONCLUSION
¶32 We cannot agree with the District Court’s conclusion that the installation of the culvert and rock bridge did not interfere with MRC’s secondary easement rights. Joukova’s construction of a structure permanently blocking use of a portion of MRC’s secondary easement inarguably encroaches on the easement. As set out above, the law governing easements makes clear that construction of the culvert constituted an unreasonable interference with MRC’s easement rights, for which the statute required Joukova to obtain written permission.
¶33 Reversed and remanded for further proceedings in accordance with this opinion.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, WHEAT and MORRIS concur.