FILED

05/30/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0404

DA 16-0404

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 126

TOM ST. JOHN, LINDA GERLEMAN, FRANK
WESTHOFF, SUZANNE WESTHOFF, et al.,

      Plaintiffs and Appellants,

  v.

CITY OF LEWISTOWN, MONTANA,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV 2015-77
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          James A. Hubble, Olive J. Urick, Hubble Law Firm, PLLP, Stanford,
Montana

      For Appellee:

          Kevin C. Meek, Cathy J. Lewis, Ugrin, Alexander, Zaddick & Higgins,
Great Falls, Montana

Submitted on Briefs:  February 22, 2017

Decided:  May 30, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Plaintiffs Tom St. John, Linda Gerleman, and Frank and Suzanne Westhoff, (collectively Land Owners) appeal from an order entered in the Montana Tenth Judicial District, Fergus County, granting summary judgment to Defendant City of Lewistown (City) and allowing the City to annex portions of Land Owners' properties. We affirm on all issues.

¶2 We restate the issues as follows:

*1. Whether the District Court erred in concluding that the City had met the statutory annexation requirements of Title 7, chapter 2, part 43, MCA.*

*2. Whether the District Court erred in concluding that the City had correctly determined there were less than a majority of valid protests.*

*3. Whether the District Court erred in concluding that Land Owners were not denied equal protection of the law.*

*4. Whether the District Court erred in concluding that Land Owners lacked standing to enforce a contract between the City and a subdivision developer.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 1982, the City passed Ordinance 1483 which addressed the provision of municipal services to areas outside of the City limits. Ordinance 1483 was amended by Ordinance 1630 and, together, these ordinances conditioned the provision of City water services outside the City's limits upon the property owners' execution of written waivers to protest future annexation by the City of their property. Some of the Land Owners signed such a waiver, and others did not. Regardless of whether a waiver was executed by Land Owners, all continued to obtain City water services.

¶4	On April 6, 2015, the City passed Resolution 3875, setting forth its plan for providing municipal services to annexed properties. On June 1, 2015, Resolution 3878 was passed stating the City's intent to annex contiguous land identified on the "Corrected Map for Annexation" (Corrected Map). The Corrected Map identified the partial lots that were at issue and which were being serviced by City water. Each partial lot was a smaller fraction of a larger lot belonging to Land Owners. The Corrected Map also identified contiguous lands connected by Castle Butte Road, portions of which were also part of the annexation, and proposed properties for annexation that were part of the Castle Ridge Acres subdivision. The Corrected Map was recorded with the Fergus County Clerk and Recorder, and bore the Clerk's seal and certification that it was a certificate of survey. Resolution 3878 specifically identified that the annexation would be conducted pursuant to § 7-2-4311, MCA, which allowed for annexation of contiguous land to an incorporated city or town. Further, Resolution 3878 stated the City had determined the proposed annexation was in the best interests of both the City and the inhabitants of the parcels to be annexed.

¶5	The City Clerk mailed notices to all registered voters and property owners in the areas being annexed and published the notice in the local paper. The notice explained how comments would be received and that the City would consider the annexation at its July 6, 2015 meeting.

¶6	The City was proposing to annex 89 lots. Of those 89 lots, 62 lots had a recorded waiver to the City's annexation. After disregarding protests from property owners who had executed a waiver, the City determined, pursuant to § 7-2-4314(d), MCA, that there

3

were less than the 51% majority of protests needed to stop the annexation. Accordingly, at the meeting on July 6, 2015, the City adopted Resolution 3880 which finalized annexation. Resolution 3880 memorialized the City's determination that the annexation was in the best interest of the City and those being annexed. It also recognized that less than a majority of the real property owners of the area proposed for annexation had submitted valid protests.

¶7 On September 25, 2015, Land Owners challenged the City's annexation by applying for a preliminary injunction and temporary restraining order. The District Court issued an Order to Show Cause and Temporary Restraining Order on November 24, 2015. On February 10, 2016, the City filed a motion for summary judgment. Following briefing and oral argument, the District Court issued a Decision and Order on June 16, 2016, granting summary judgment in favor of the City on all issues.[1] Land Owners appeal the entry of summary judgment for the City.

## STANDARD OF REVIEW

¶8 This Court reviews de novo a district court's summary judgment ruling, applying the same rule, M. R. Civ. P. Rule 56(c), as the district court applies. *Modroo v. Nationwide Mut. Fire Ins.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389. Summary Judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. M. R. Civ. P. Rule 56(c); *Bennett v. Hill*, 2015 MT 3, ¶ 9, 378 Mont. 141, 342 P. 3d 691.

---

[1] The District Court had previously granted the City's motion to stay Land Owners' request for class certification. Land Owners do not appeal that order.

4

¶9 Section 7-2-4742, MCA, provides for court review of whether statutory annexation procedural requirements were followed and satisfied. "If all of the substantive and procedural requirements of the annexation statutes are included and complied with by a municipality in the annexation procedure, the law will necessarily have been followed." *Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 20, 323 Mont. 109, 99 P.3d 151. We explained in *Gregg* that compliance with the annexation statutes must be "complete and municipalities must follow all of the directives of the statutes." *Gregg*, ¶ 20. However, if a statutory mandate contains a subjective component, "[c]ompliance must be substantial . . . [to allow] a municipality to exercise discretion in making its planning decisions." *Gregg*, ¶ 20.

## DISCUSSION

¶10 *1. Whether the District Court erred in concluding that the City had met the statutory annexation requirements of Title 7, chapter 2, part 43, MCA.*

¶11 Pursuant to § 7-2-4718(2), MCA, a municipality "may in its discretion select one of the annexation procedures in parts 42 through 47 that is appropriate to the circumstances of the particular annexation." The municipal governing authority must then follow "the specific procedures prescribed in the appropriate part." Section 7-2-4718(2), MCA. The City chose to conduct its annexation of Land Owners' properties pursuant to part 43, allowing for annexation of contiguous land. More specifically, § 7-2-4311, MCA, provides:

> Any tract or parcels of land that have been or may be platted into lots or blocks, streets, and alleys or platted for parks, the map or plat of which is filed in the office of the county clerk and recorder of the county in which the tracts or parcels of land are situated, or any unplatted land that has been

5

surveyed and for which a certificate of survey has been filed, as provided by law, if the platted or unplatted land is contiguous to any incorporated city or town, may be embraced within the corporate limits of the city or town, and the boundaries of the city or town may be extended to include the platted or unplatted land in the manner provided in 7-2-4312 through 7-2-4314 and 7-2-4325.

While not a model of statutory clarity, § 7-2-4311, MCA, sets forth two relevant requirements for annexation of contiguous land. First, the land must be platted, and the plat filed with the county; *or,* if unplatted, the land must be surveyed, and a certificate of survey filed with the county. Second, the land must be contiguous with an incorporated town or city.

¶12    Finally, also contained within part 43, is the statutory requirement that the governing body of any city or town council, determine "when, in its judgment . . . expressed by resolution that is passed and adopted, it is in the best interest of the city or town and the inhabitants of any contiguous platted tracts or parcels of land" to be annexed. Section 7-2-4312, MCA. Accordingly, for the City to annex Land Owners' properties pursuant to Part 43, the requirements of both §§ 7-2-4311 and 7-2-4312, MCA, had to be satisfied by the City.

¶13    Land Owners argue that the City failed to comply with the statutory provisions of Part 43 in three ways: (1) there was not a plat or survey on file with the county; (2) the properties were not contiguous; and (3) the annexation was not in the best interests of the "inhabitants of the parcels to be annexed." Land Owners assert if the City fails to comply with any one of these statutory requirements then the annexation is void. Land Owners are correct, with the exception of the best interest requirement contained within § 7-2-4312,

MCA. The statutory requirements of § 7-2-4311, MCA, are not discretionary and the annexation is void if the City has failed to follow statutory directives. However, we conclude that the City has complied with § 7-2-4311, MCA, by filing a survey with the county and annexing only lands which are contiguous. Additionally, the Legislature has expressly given the governing city or town body discretion to determine the best interests of its inhabitants, which may be reviewed only if the governing body has proceeded contrary to statute. We address each of Land Owners' arguments.

> *a. Whether there was a plat or survey for the properties recorded with the county clerk and recorder.*

¶14 Land Owners argue that the plat does not identify the partial lots the City seeks to annex. They point to the Corrected Map which identifies partial lots with a note "not a parcel" and allege that annexable land may be either a tract or a parcel, but not a partial lot. Land Owners admit "[c]ertain annexed parcels within Corrected Map 2015-1 are only portions of actual, larger platted parcels." Conversely, the City argues that all property has been platted and identified in a certificate of survey, which has been filed with the county clerk and recorder.

¶15 We first observe that § 7-2-4311, MCA, does not require a new plat to be filed when part of a lot is to be annexed, especially given the circumstance here where the lot has previously been platted and that plat has been identified as part of a larger parcel on a filed certificate of survey. Section 7-2-4311, MCA, speaks of "tracts or parcels" which we have explained means "some area of land." *Missoula Rural Fire Dist. v. City of Missoula*, 286 Mont. 387, 394, 950 P.2d 758, 762 (1997). Here, although the Corrected Map identified

7

the partial lot as "not a parcel," the partial lots nonetheless were tracts of land and identified as a portion of a larger parcel of land in the certificate of survey. Section 7-2-4311, MCA, requires either a plat or certificate of survey. The Corrected Map, which identifies all of the land proposed to be annexed, was recorded with the Fergus County Clerk and Recorder. Accordingly, the City followed the statutory directive for filing a certificate of survey.

¶16 It is worth noting that Land Owners' argument is also contrary to an annexation statute, in the same part, specifically addressing the provision of municipal services and which allows for annexation of *only* that portion of the tract or parcel that is being *immediately* serviced by the water. *See* § 7-13-4314, MCA ("The consent to annexation is limited to that tract or parcel or portion of tract or parcel that is clearly and immediately, and not potentially, being serviced by the water or sewer system."). "We interpret related statutes to harmonize and give effect to each." *Gregg*, ¶ 38. Consistent with these statutory provisions, the City proposed annexation of only a portion of Land Owners' properties.

¶17 Land Owners also argue that the phrase included on Corrected Map, "NOTE: NO FIELD SURVEY WAS PERFORMED," somehow negates that the Clerk certified the Corrected Map as a certificate of survey and that the Corrected Map itself states it is a certificate of survey completed by a survey company. The recorded Corrected Map shows the acreages and distances in feet for each partial lot. The property owners and public are thus on notice of what land the City proposes to annex. We conclude that the City complied with the statutory requirement for filing with the county clerk and recorder a copy of the plat or survey.

8

*b. Whether the properties were contiguous.*

¶18    Land Owners argue the properties being annexed are not contiguous to the City limits. The crux of their argument rests on their "hopscotch" argument; that is, when selecting parcels to annex, the City used a hopscotch method and skipped parcels and randomly selected other parcels to annex. Land Owners' hopscotch argument implies that there is a break in the contiguousness of the parcels because they are only connected by Castle Butte Road and the City has not attempted to annex the lots on either side of the road. Land Owners' argument, however, fails to consider the provisions of § 7-2-4301, MCA, which are applicable to the instant annexation proceeding. Section 7-2-4301, MCA, provides that tracts or parcels of land "shall be deemed contiguous . . . even though [they] may be separated from such city or town by a street or other roadway . . . or strip of unplatted land too narrow or too small to be platted." Furthermore, in *Missoula Rural Fire Dist.*, we addressed this same question and held that "[a] street is indisputably an area of land, however narrow or long." 286 Mont. at 394, 950 P.2d at 762 (1997). We also determined that a street can be considered contiguous to other land for purposes of annexation pursuant to § 7-2-4301, MCA.[2] We conclude the City's proposed annexed land was contiguous to existing annexed land and connected by Castle Butte Road, also part of

---

[2]    Land Owners do not argue that the City lacked a "legitimate governmental interest" in pursuing annexation of lands for which the City was providing services. *See Missoula Rural Fire Dist.*, 286 Mont. at 395, 950 P.2d at 763. While Land Owners claim that the City's provision of services was inadequate, this is a separate and distinct issue from whether the City could annex contiguous lands for which the City was already providing services. We concluded in *Missoula Rural Fire Dist.* that the City of Missoula had a legitimate governmental interest to annex lands when it was providing services to those lands. *Missoula Rural Fire Dist.*, 286 Mont. at 395, 950 P.2d at 763.

9

the annexation. Section 7-2-4301, MCA, and *Missoula Rural Fire Dist.* expressly provide that the lands under these circumstances are to be considered contiguous.

*c. Whether this Court should review the City's "best interests" determination when the City proceeded in accordance with statutory requirements.*

¶19 Land Owners argue that a court may review a municipality's determination of best interests when a municipality has not proceeded with annexation in accordance with statutory directives. The City maintains that a court should not review a municipality's determination of "best interest" when the Legislature has given the City that discretion. *Penland v. City of Missoula*, 132 Mont. 591, 595-96, 318 P.2d 1089, 1092 (1957).

¶20 The annexation in *Penland* was challenged on the basis that it was not in the best interests of the Plaintiffs. We affirmed the district court's conclusion that the benefits of annexation was a matter for the commissioners to decide and, in doing so, clearly stated:

> Since the legislature has set down the manner in which the city may annex outlying territory, and has expressly given the city council the discretion to determine whether or not it is in the best interests of both groups, the exercise of that discretion may be reviewed by a court only when, and if, they have proceeded contrary to statute.
>
> . . .
>
> When the legislature in section 11-403 allowed city councils to weigh the interests involved in annexing or refusing annexation they did not contemplate courts of law substituting their judgment for that of the city council's. Had they desired such a result it would have been an easy matter to have provided for that contingency.

*Penland*, 132 Mont. at 595-96, 318 P.2d at 1092.

¶21 Here, we do not have a municipality proceeding contrary to the statute, as the City filed a plat or survey and the area to be annexed is contiguous to the City. Further, as we have also concluded that the City has complied with statutory procedure regarding the

validity of the protests (see discussion *infra*), we will not reconsider the City's "best interests" determination on this basis either. The District Court was correct in concluding it should not review the City's "best interest" determination. In the absence of any evidence suggesting the City proceeded contrary to the statute, we agree with the District Court and similarly will not reconsider the City's "best interest" determination.

¶22 We conclude that the City followed the statutory requirements of Title 7, chapter 2, part 43, MCA, and that, therefore, the City's "best interest" determination will not be reviewed.

¶23 *2. Whether the District Court erred in concluding that the City had correctly determined there were less than a majority of valid protests.*

¶24 Pursuant to § 7-2-4314(d), MCA, "if the resolution is disapproved in writing by a majority of real property owners of the area proposed to be annexed, . . ." the area may not be annexed. Land Owners argue that some or many of the waivers to annexation obtained by the City were signed under duress or fraud. Land Owners maintain that the City advised they would terminate their water service if they did not execute a waiver to protest annexation. They also argue that waivers signed after the annexation commencement should be discounted, and therefore any protests that were on record that were disregarded because of a waiver should be reinstated and counted toward the total number of property owners disapproving.

¶25 This Court has held that requiring consent to annexation in exchange for the provision of city services is permissible. *Schanz v. Billings*, 182 Mont. 328, 337, 597 P.2d 67, 72 (1979). We have also held that consent to annex as a condition for *continuing* to

11

receive utility service by a city is likewise permissible. *Gregg*, ¶¶ 35-38. If a landowner is currently receiving city services but does not wish to be annexed or sign a waiver, the owner can make arrangements to disconnect from services. *Gregg*, ¶ 38. Here, as in *Gregg*, Land Owners were connected to the City's water supply for a period of time and continued to receive service without a request from the City to sign a waiver. Similarly, as in *Schanz*, Land Owners are receiving utilities from the City which, in exchange for those services, seeks to annex the property receiving the benefit of those services. Property Owners make an additional argument that they are not receiving any added service but are still being taxed at a higher rate; however, taxes are a separate issue and are not part of our analysis regarding annexation. Construing *Gregg* and *Schanz* together, we conclude the City may require annexation waivers in exchange for utility services even if the waivers were requested after the utilities and annexation proceedings were initiated. Accordingly, the District Court correctly concluded that Land Owners' allegations of fraud and duress were not sustainable as a matter of law, based on the authority of § 7-2-4314(d), MCA, *Gregg*, and *Schanz*.

¶26    *3. Whether the District Court correctly concluded that Land Owners were not denied equal protection under the law.*

¶27    Land Owners maintain the annexation denied them and other similarly situated property owners their constitutional right to equal protection of the law by creating two separate classes: those being annexed and those not being annexed. To support their position, Land Owners rely upon *Roosevelt v. MT Dept. of Rev.*, 1999 MT 30, 293 Mont. 240, 975 P.2d 295, where the state's method of assessing property values was challenged.

In *Roosevelt,* the plaintiff's property was being taxed at over 100% of its property value; while other properties were taxed at 100% or less of their property value. The court found the statute unconstitutional as applied because taxing property owners at different rates violated equal protection. *Roosevelt,* ¶ 46.

¶28 *Roosevelt*, which dealt with a tax statute, is not helpful authority when considering the statutory scheme for annexation by a municipality of contiguous land. The City relies upon *Piedmont Ford Truck, Inc. v. City of Greensboro*, 380 S.E.2d 107 (N.C. 1989) and argues that it is not a denial of equal protection for a municipality to annex land without annexing land similarly situated. In *Piedmont Ford Truck, Inc.*, the Plaintiffs claimed that they were denied equal protection of the law because other property similarly situated was not annexed. The Supreme Court of North Carolina held that, "[w]e believe our cases and the federal cases hold that annexation is a legislative decision with which the courts may not interfere unless the complaining party is deprived by the annexation of some constitutional right." *Piedmont Ford Truck, Inc.,* 380 S.E.2d at 109. The court determined that "plaintiffs have cited no authority and we can find none that holds that the equal protection clause of the federal or state constitution requires that other similar land be annexed when municipal boundaries are extended." *Piedmont Ford Truck, Inc.,* 380 S.E.2d at 110.

¶29 We agree with the reasoning of *Piedmont Ford Truck, Inc.* and the City. An equal protection claim could be made in nearly every annexation case because annexation, by its very nature, is an exercise of choosing one parcel over another to annex. While annexation does distinguish between those property owners whose property will be annexed and those

13

property owners whose property will not be annexed, this is a necessary result of the municipal governing body exercising its discretion in drawing the annexation line. Absent a failure of the governing body to follow statutory directives, which are designed to provide notice and to protect the right of participation, the governing body's decision of what property to annex is left to its discretion.

¶30 We conclude that the District Court did not err in granting summary judgment to the City on Land Owners' claims that they were denied equal protection of the law by the City's decision of what properties to annex.

¶31 *4. Whether the District Court erred in concluding that Land Owners lacked standing to enforce a contract between the City and a subdivision developer.*

¶32 Land Owners seek to enforce a contract between Castle Ridge Acres subdivision and the City. They argue that the City has not maintained Castle Butte Road properly. We conclude, however, that Land Owners lack standing to bring this claim, because they are neither signatories to nor intended beneficiaries of that contract.[3]

¶33 We have held "[t]here is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party." *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 18, 366 Mont. 285, 291 P.3d 1082, citing *Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶ 19, 363 Mont. 151, 267 P.3d 756. Those that are incidental beneficiaries lack standing to enforce the contract from which they benefit. *Ronning v. Yellowstone County*, 2011 MT 79, ¶ 14, 360 Mont. 108,

---

[3] Land Owners have not appealed the stay of the class certification entered by the District Court which Land Owners indicate would have included, as members of the class, residents of the Castle Ridge Acres subdivision.

253 P.3d 818. A plaintiff cannot simply allege that it is an intended third-party; plaintiff must show "from the face of the contract that it was intended to benefit [them]." *Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 20, 365 Mont. 71, 278 P.3d 1002. We agree with the District Court that Land Owners are third parties that are benefiting, or incidental beneficiaries, but they are not intended third-party beneficiaries. No Land Owners live in the subdivision, their names are not in any part of the contract, and they are not identified as third-party beneficiaries. Land Owners argue that since some of them use roads located in the Castle Ridge Acres subdivision they are intended third-party beneficiaries under the contract. However, the contract makes no mention of third-party beneficiaries and no mention of Land Owners. Since Land Owners are not intended third-party beneficiaries they lack standing to enforce the contract.

¶34 As a final matter, the issue surrounding maintenance of Castle Butte Road has no bearing on the legality of annexation and, as the District Court observed, is not material to a summary judgment motion and is better entertained in another forum.

## CONCLUSION

¶35 After notice and public hearing, the City determined annexation was in the best interests of the City and the inhabitants of the parcels to be annexed. The City has complied with the statutory provisions for annexing contiguous lands. The City filed with the Fergus County Clerk and Recorder plats and a certificate of survey (Corrected Map) providing notice to the public of the lands it intended to annex. The City also correctly determined that there were not a sufficient number of valid protests to prohibit the annexation. Finally, Land Owners have failed to set forth an equal protection challenge under the statutory

15

scheme for annexation and they have no standing to enforce a contract between the City and a subdivision developer.

¶36 The order of the District Court granting summary judgment to the City is affirmed.


/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

Justice Jim Rice, concurring.

¶37 This case demonstrates how far the courts have permitted annexation procedure to depart from the requirements of the statutes with regard to the issue of contiguity. In my view, the courts have gotten ahead of the Legislature on this issue and legislated provisions that have significantly altered, and certainly watered down, the Legislature's contiguity requirement.

¶38 Below, the unshaded area, at the top left of the map, indicates the area currently within the City of Lewistown. The two shaded areas are the properties that the City is seeking to annex in this case, which I will refer to as the North Area and the South Area. Running down through and adjacent to these separated properties is a segment of Castle Butte Road, which the City also seeks to annex.



**City of Lewistown**

North Area
(proposed annexation area)

Castle Butte Rd

Castle Butte Rd

Castle Butte Rd

South Area
(proposed annexation area)

South Area
(proposed annexation area)

Castle Butte Rd

¶39 The Legislature has authorized cities to annex land that is "wholly surrounded by the city," § 7-2-4501, MCA, or land that is "contiguous to any incorporated city," § 7-2-4311, MCA. The City of Lewistown here claims, and the Court holds, that all of the land in the North Area, South Area, and Castle Butte Road are "contiguous" to the City of Lewistown. Opinion, ¶ 18.

¶40 What is obvious from the map is the land comprising the proposed annexation areas is not "contiguous" to the City, as that term is commonly understood, and as the Land Owners argue. The Court faults the Land Owners for failing to consider § 7-2-4301, MCA, *see* Opinion, ¶ 18, but that statute clearly does not authorize what is occurring here. The provision simply authorizes annexation of properties that would otherwise be contiguous except for a street, roadway, or tract of land "too narrow or small to be platted," which separates them. Section 7-2-4301, MCA. This is the extent of the legislatively-enacted exception to the contiguity requirement to account for roads or small properties.

¶41 The Legislature's contiguity requirement was significantly altered by this Court in *Missoula Rural Fire Dist. v. City of Missoula*, 286 Mont. 387, 950 P.2d 758 (1997). First, the Court held that a road constituted a "tract" or "parcel" under § 7-2-4301, MCA, and therefore could itself be annexed without limitation, "however narrow or long" it may be. *Missoula Rural Fire Dist.*, 286 Mont. at 394, 950 P.2d at 762. Of course, if the Legislature intended this statute to authorize annexation of roads, then the exception to the contiguity requirement to account for roads would be completely unnecessary. The City could simply annex the road as well. However, the Court did not undertake any analysis of legislative intent. This was the first step in a significant expansion of annexation powers.

¶42 Secondly, the Court held that a road, starting within the city and running outside the city, would be considered contiguous in its entire length for purposes of its annexation if the city had a "legitimate governmental interest" in annexing the entire road. *Missoula Rural Fire Dist.*, 286 Mont. at 395, 950 P.2d at 763. This test had no origin under Montana law but was annexed from foreign jurisdictions. *Missoula Rural Fire Dist.*, 286 Mont. at 394-95, 950 P.2d at 762-63. Here, the Land Owners do not challenge the City's annexation of Castle Butte Road as lacking a "legitimate governmental interest."

¶43 Then, the Court took one more leap, holding that the now-annexed road would also satisfy the contiguity requirement for the annexation of *other*, *noncontiguous properties* beyond the city's borders that lay along the road. *Missoula Rural Fire Dist.*, 286 Mont. at 396, 950 P.2d at 763. The annexation sought there was of property asserted to be "wholly surrounded" by the City of Missoula under § 7-2-4501, MCA, and the Court used the subject road, after approving its annexation, to hold that the City now wholly surrounded the property. *Missoula Rural Fire Dist.*, 286 Mont. at 396, 950 P.2d at 763. Here, the Court now permits the use of the annexed Castle Butte Road to satisfy the contiguity requirement, not for "wholly surrounded" annexation as in *Missoula Rural Fire Dist.*, but for "contiguous" annexation under § 7-2-4311, MCA.

¶44 The judicial changes to the annexation process permit a city to use roads to extend octopus-like annexation tentacles into non-contiguous areas, and then annex properties that would otherwise be completely non-contiguous to the city, in contravention of the annexation statutes. This is what has occurred here. While an argument could be made that the North Area satisfies the statutory contiguity requirement, the South Area could not

20

be considered contiguous without this Court's rulings that expansively permit annexation of Castle Butte Road and of the otherwise non-contiguous areas lying along the Road.

¶45 We have stated that "'[w]e presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes . . . . We presume that if the legislature disagreed with our interpretation . . . it would have amended the statute accordingly.'" *Musselshell Ranch Co. v. Seidel-Joukova*, 2011 MT 217, ¶ 14, 362 Mont. 1, 261 P.3d 570 (citation omitted). I am concerned that interpreting our part-time Legislature's silence about our many court decisions to be an agreement with all of them presumes too much. "To presume that the Legislature's passive failure to amend a statute constitutes affirmative 'agreement' with our statutory interpretation is a dangerous and untenable precedent." *Musselshell Ranch Co.*, ¶ 56 (Nelson, J., concurring and dissenting).

¶46 I realize that there are other legal and practical limitations on annexation beyond the issue of contiguity. However, I am very concerned that the courts have undermined the statutes in this regard and have thereby breached the constitutional separation of powers. Here, we have no argument that *Missoula Rural Fire Dist.* was wrongly decided and should be overturned, or its principles do not govern. *Stare decisis* thus requires its application.

¶47 I concur with the Court's Opinion, although my concurrence with the contiguity portion of the Opinion is most reluctant.

/S/ JIM RICE

Justice James Jeremiah Shea joins the concurrence.

/S/ JAMES JEREMIAH SHEA

21